IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In Re:

| | |
|---|---|
| SHARON DIANE HILL, | Case Number 01-22574 JAD |
|     *Debtor*, | Chapter 13 |
| | |
| ROBERTA A. DeANGELIS, | Related to Doc. No. 465, 562 |
| Acting United States Trustee | |
| for Region 3, | |
|     *Movant*, | |
| | |
| v. | |
| | |
| COUNTRYWIDE HOME LOANS, | |
| INC., GOLDBECK, McCAFFERTY | |
| AND McKEEVER, and | |
| ATTORNEY LESLIE PUIDA, | |
|     *Respondents*. | |

## MEMORANDUM ORDER

On October 5, 2010, the Court entered a *Memorandum Opinion and Order*, Document No. 562[1], which found that sufficient cause existed to sanction Respondents Goldbeck, McCafferty and McKeever ("GMM") and Attorney Leslie A. Puida ("Puida") as to Items 6 and 7 of the *Rule to Show Cause* ("Rule"), Document No. 465, issued on July 29, 2009. Those two Items provided:

> (6) Goldbeck McCafferty and McKeever and Leslie Puida intentionally, or with reckless disregard and/or indifference to the applicable facts, failed to disclose to the debtor's attorney that three Payment Change Letters had never actually been sent, all in an improper attempt to collect on questionable debt while attempting to resolve a matter that was pending before this Court.

---

[1] Reported at *In re Hill*, 437 B.R. 503 (Bankr. W.D. Pa., October 5, 2010).

1

> (7) Goldbeck McCafferty and McKeever and Leslie Puida intentionally, or with reckless disregard and/or indifference to the applicable facts, made inaccurate oral statements in response to the Court's inquiry regarding when Leslie Puida told the Debtor's attorney that the three Payment Change Letters were not what they purported to be, but instead were memoranda created years after the event.

The Court did not actually decide what sanctions would be imposed in the *Memorandum Opinion and Order*, instead deferring that decision until after a hearing scheduled for November 22, 2010 to allow GMM and Puida an opportunity to present evidence of mitigation or other pertinent evidence going to an appropriate sanction. Prior to the hearing, at the request of counsel for GMM and Puida, the Court also convened a telephonic status conference, and entered a related order, to provide further guidance as to expectations for the hearing.

The hearing went forward as scheduled and GMM and Puida called three witnesses and submitted a number of exhibits. Attorney Robert Bernstein was called as an expert and opined on the practices and procedures currently being followed at GMM, some of them implemented as a direct result of the *Hill* matter. The Court found Atty. Bernstein to be a credible witness and was gratified to hear that GMM does seem to have taken a number of steps that should result in improved operations and responsiveness to legitimate debtor concerns in cases being handled by the firm. Of course, Atty. Bernstein's testimony went only to "after-the-fact" matters. He had no personal knowledge or other insights as to the events underlying the *Rule*.

Attorney Michael McKeever, one of the principal shareholders of GMM also testified. McKeever confirmed much of the testimony of Mr. Bernstein concerning changes which have been implemented by GMM in response to the *Hill* matter, including an increased reliance on the presence

of its own attorneys in the Western District as opposed to the use of local counsel. He apologized to the Court and the other interested parties and testified that GMM has been damaged by this whole matter in a number of ways. On a strictly monetary level, the firm has incurred out-of-pocket attorney and expert fees approaching $400,000 which will not be reimbursed by insurance coverage. McKeever also testified that two large clients have suspended referrals to the firm as a result of this matter, although the extent of that 'loss" is somewhat unclear because it does not apply to cases already in the pipeline, and no information was provided as to how long the suspension will last.[2]

McKeever also described the damage to GMM's professional reputation, which he said has been significant. He stated that the firm has "self-reported" to the Pennsylvania Disciplinary Board, although the extent of that reporting was left somewhat unclear. The firm has also notified its clients as to "what happened" in this matter although the specific content and description of the notice being communicated was not identified. While still commendable, the mitigatory value of this action was somewhat tempered by the fact that it was only undertaken after a client made inquiries with the firm indicating that it was aware of this matter.[3] McKeever testified that the firm is committed to efforts to restore its reputation and improve its internal processes.

The final witness presented was Puida who testified emotionally as to the effect this matter has had on her individually. From an economic standpoint, GMM has reduced her compensation significantly as a result of the findings in the *Memorandum Opinion and Order*. This

---

[2] It is perhaps worth noting that Respondent Countrywide Home Loans, Inc., now under the umbrella of Bank of America, is not one of the clients that has suspended referrals to GMM.

[3] McKeever testified that the issue of "client notification" was under discussion at the time this inquiry came into the office.

has hit her especially hard since she is the breadwinner for her family. She is now under an "action plan" at the firm designed to improve her professional and case management skills, including the documentation of all "substantive" communications in the cases she is handling. Puida testified that she is committed to being more aware of what is going on in her cases and better prepared to respond to any issues which might arise in the hearings she attends.

Although the evidence presented by GMM and Puida at the hearing was helpful as far as it went, it really did not go the core of the *Rule*, *i.e.*, a finding that Puida, and by extension GMM, had not been honest with this Court. In closing remarks at the sanction hearing counsel for the United States Trustee noted that the evidence had been focused on competence rather than character. The Court largely agrees with that sentiment. No matter how extensive the procedures and checklists and forms that a high volume law firm like GMM may implement, they are not a substitute for the character of the individual persons who are supposed to be abiding by them. The Court was disappointed by the lack of any evidence to show a recognition by GMM, generally, of the need for its attorneys to employ a policy of absolute candor in dealing with this and other courts.

The Court was also disappointed by the apparent lack of recognition of this need by Puida. When asked what was the most important lesson she had learned from this entire matter, she replied that she needed to do a better job of documenting her communications. When asked point blank by counsel for the UST whether she wanted to now "change her story" about what had really happened between her and Attorney Ken Steidl, and despite being given assurances by the Court that she could invoke her Fifth Amendment protections if she wished without any consequence in this proceeding or as to the sanction ultimately imposed, Puida again insisted that she had informed Mr.

4

Steidl about the letters and simply failed to document it.

The Court finds this lack of acceptance of responsibility, troubling. Its prior finding that Puida lied was not made lightly, nor in the end was it a close call – the Court would have made the same finding even if the applicable evidentiary standard had been clear and convincing rather than merely a preponderance. Furthermore, this was not a "shades of gray" type situation – either Mr. Steidl or Puida was lying and the Court found it to be Puida. The evidence that Puida lied was considerable. For Puida to thus continue to fall back on a "lack of documentation" as her only "sin" does give the Court some pause as to whether she truly appreciates the gravity of the situation.[4]

Having said all of the above, the Court is left with deciding appropriate sanctions to be imposed against GMM and Puida. The UST filed a helpful *Preliminary Recommendation Regarding Sanctions*, Document No. 575, and her counsel further expounded on those recommendations at the close of the hearing. The UST suggests that Puida should be suspended from practicing before this Court for a period of a year and that GMM should be required to pay a monetary sanction of $50,000.[5] The UST also raised a number of other possible sanctions for the

---

[4] The Court made clear in a prior order that the hearing on sanctions was not intended to be a retrial of the findings previously made. However, knowing that she was going to continue to refuse to acknowledge that she lied about what she had told Mr. Steidl, Puida should have been prepared to offer something in support thereof more than just her bare assertions, which have already been heard and rejected by the Court. In that regard, it is worth noting that the Court commented both at trial and in the *Memorandum Opinion and Order* about its surprise that no telephone billing records had been introduced to bolster Puida's contentions about her conversations with Mr. Steidl. See 437 B.R. at 535 n. 7. Assuming such billing records actually tend to support Puida, yet had been overlooked as evidence for trial, it seemed natural to attempt their introduction at this stage, if they in fact existed, as mitigation evidence in support of her obviously hollow contention that she did not lie to the Court, but no effort was made in that regard.

[5] Counsel for the UST candidly admitted that his suggestion of $50,000 as a monetary sanction was in effect an arbitrary number, not based on any sort of calculation or formula.

Court's consideration, including the imposition of a CLE requirement, public reprimand or censure, or the requirement to perform *pro bono* client representation or mediation services.

Turning first to GMM, the Court will not impose a monetary sanction as suggested by the UST. Given the magnitude of the financial loss which GMM has already experienced in the form of attorney fees and lost client revenue as a result of this matter, a further monetary sanction near the amount suggested by the UST is unlikely to have any significant further deterrent effect on GMM. If the Court were to impose a sanction in a much higher amount, it could jeopardize the continued operation of GMM, possibly threatening the livelihoods of innocent employees who had nothing to do with the violations addressed in the *Rule*. The Court also rules out any requirement for mandatory CLE or ethical training. As indicated at the hearing, the essence of the *Rule* is a lack of honesty. The Court does not believe it is necessary to undertake training in order to know that dishonesty is wrong despite the potential consequences of telling the truth. Honesty and truthfulness are matters of character that cannot be taught, if at all, in a few hours of CLE training. As for a *pro bono* requirement for client representation, that is something the attorneys in the firm should already be doing voluntarily, *Pa. R.P.C. 6.1*, so the Court does not find it to be an appropriate sanction for this matter. Finally, the firm will need to restore its professional reputation before it can effectively function as a mediator, ruling out any sanction requiring that it act as a *pro bono* mediator.

The Court therefore finds that the purpose behind the *Rule* will be best served by having the *Memorandum Opinion and Order*, together with this *Order*, serve as a public reprimand of GMM. In addition, GMM will be required to serve a copy of the *Memorandum Opinion and Order*, and this *Order*, on the Disciplinary Board of the Supreme Court of Pennsylvania.

As for Puida, the UST's primary suggestion of a suspension is rejected. Puida has already, in a sense, been suspended from practice in this Court. The firm has taken her off assignment to any cases filed in this District, and it seems highly unlikely that is going to change anytime soon. Were the Court to order a suspension of Puida, it would thus add very little to the current reality, at the expense of burdening the District Court with a request for a suspension, and possibly jeopardizing other GMM personnel in unintended ways. The other suggestions related to CLE training, mediation and the like are rejected for reasons similar to those stated above in the discussion as to GMM. The Court did consider a monetary sanction against Puida, however that is rejected as well. She has already suffered a significant financial detriment as a result of this matter, and the Court is concerned that any further monetary sanction would be unnecessarily punitive and could harm her family.

The Court therefore concludes that, as with GMM, the purposes behind the *Rule* will best be served as to Puida by having the *Memorandum Opinion and Order*, together with this *Order*, serve as a public reprimand of her. Puida will be required to serve a copy of the *Memorandum Opinion and Order*, and this *Order,* on the Disciplinary Board of the Supreme Court of Pennsylvania, as well as on the American Bankruptcy Institute in connection with her effort to be certified as a bankruptcy specialist by that organization.

*AND NOW*, this *24th* day of *November, 2010*, for the reasons stated above and on the record at the time of the hearing, it is **ORDERED, ADJUDGED and DECREED** that:

(1) The *Memorandum Opinion and Order* of October 5, 2010, together with this *Order*, are intended to serve as a public reprimand of Respondents Goldbeck, McCafferty and McKeever ("GMM") and Attorney Leslie A. Puida ("Puida") for the misconduct as described in Items 6 and 7 of the *Rule to Show Cause*, Document No. 465, issued on July 29, 2009.

(2) ***On or before December 3, 2010,*** GMM shall serve a copy of this *Order*, together with the *Memorandum Opinion and Order* of October 5, 2010, on the Disciplinary Board of the Supreme Court of Pennsylvania, and shall file a certificate of service to that effect with the Court within three days of doing so.

(3) ***On or before December 3, 2010,*** Puida shall serve a copy of this *Order*, together with the *Memorandum Opinion and Order* of October 5, 2010, on the Disciplinary Board of the Supreme Court of Pennsylvania and the American Bankruptcy Institute, and shall file a certificate of service to that effect with the Court within three days of doing so.

(4) ***On or before December 3, 2010,*** Counsel for Respondents GMM and Puida shall electronically file copies of the exhibits that were introduced at the hearing, those being Exhibits 1 through 18 and 22 though 35.

Thomas P. Agresti, Chief Judge
United States Bankruptcy Court

Case Administrator to serve:
 Francis X. Manning, Esq.
 Norma Hildenbrand, Esq.
 Patrick S. Layng, Esq.
 Lisa D. Tingue, Esq.
 Dorothy A. Davis, Esq.
 Thomas A. Connop, Esq.
 William Pietragallo, II